# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 15-165 (35) (JRT/LIB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| LUCAS JOHN PETERSON, | |
| Defendant. | |

---

Deidre Y. Aanstad and Melinda A. Williams, Assistant United States Attorneys, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for plaintiff.

George R. Dunn, **TILTON & DUNN, P.L.L.P**, 101 East Fifth Street, Suite 2220, St. Paul, MN 55101, for defendant.

Defendant Lucas John Peterson was charged with conspiracy to distribute heroin, methamphetamine, oxycodone, hydromorphone, hydrocodone, and methadone in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and § 846.  Peterson moved to suppress evidence obtained through searches or seizures of his residence, statements made during his arrest and interview, and any information obtained through wire interceptions, electronic surveillance, or any other method.  Peterson also moved to sever his case from all other defendants.  On December 2, 2015, United States Magistrate Judge Leo I. Brisbois issued a Report and Recommendation ("R&R") recommending that the Court deny all four motions.  Peterson objected generally to the Magistrate Judge's

recommendations on his motions.  The Court has conducted a *de novo* review of those

objections, and will overrule Peterson's objections and adopt the R&R.

## BACKGROUND

## I.   FACTUAL BACKGROUND[1]

On April 14, 2014, West Central Minnesota Drug and Violent Crimes Task Force

Special Investigator Daniel Skoog drafted an application for a warrant to search

Peterson's residence on Martin Drive in Waubun, Minnesota ("Martin Drive Residence").

The application was based on information obtained through an ongoing narcotics

investigation involving the Drug Enforcement Agency ("DEA"), Department of Alcohol,

Tobacco, Firearms and Explosives ("ATF"), and other regional narcotics task forces.

The warrant application noted law enforcement had reason to believe Peterson was one of

the individuals working within the drug trafficking organization led by Omar Beasley,

specifically distributing controlled substances on the White Earth Indian Reservation.

Law enforcement's belief originated from two confidential informants ("CS2" and

"CS6"); a cellphone conversation intercepted on April 13, 2014; and other law

enforcement observations.

In a phone call intercepted on April 13, 2014, Durial John Jackson called Beasley

on Samantha Fasthorse's cellphone and discussed a new gun Jackson had purchased.

Beasley asked whether "Luke" was interested in obtaining the new gun.  Jackson asked if

---

[1] Peterson has not objected to the Magistrate Judge's factual findings, and therefore, the Court adopts the facts as stated by the Magistrate Judge and summarized here.  The Court only summarizes the facts necessary to address Peterson's objections.  Further facts are available in the R&R.

Beasley would like to talk with "Luke." "Luke" then came on the line and told Beasley, "I got that straight kill uncut in the . . . safe still, like sixty of it," which law enforcement understood to mean he had a large amount of high-quality heroin in his safe. Law enforcement believes "Luke" to be Peterson. The next morning, Fasthorse and Jackson were seen leaving Peterson's residence.

CS2 went with Beasley to meet "Luke" in White Earth, Minnesota, twice during the summer of 2014. On one of these instances, CS2 saw Beasley give "Luke" ten grams of heroin. Law enforcement believes "Luke" to be Peterson. CS2 provided information to law enforcement, including names and addresses, verified by independent investigation, in exchange for future consideration in an ongoing case.

CS6 purchased heroin from Peterson twice at the Martin Drive Residence. On January 29, 2015, CS6 made a controlled purchase of heroin from Peterson, monitored and audio recorded by law enforcement. During the sale, CS6 gave Peterson an additional $300 to give to Beasley as partial payment for an outstanding debt. On a recorded phone conversation, CS6 called Beasley to confirm Peterson had relayed the partial payment to him, which he had. During the call, Beasley made statements that law enforcement understood to mean he planned to give Peterson fifty to one hundred grams of heroin for CS6 to pick up. On April 9, 2015, CS6 purchased 3.62 grams of heroin from Peterson. CS6 also provided information including names, addresses, and telephone numbers, verified by independent investigation, to law enforcement. Skoog noted in the affidavit that CS6 received future consideration in an ongoing case and financial compensation for living expenses in exchange for his assistance. The affidavit also stated

that law enforcement was investigating then-recent claims that during the time CS6 was cooperating with law enforcement, he was independently engaging in unauthorized drug sales.

Skoog testified on October 20, 2015, that neither CS2 nor CS6 had been confidential informants before and therefore had not provided law enforcement with reliable information in the past. Upon receiving and verifying allegations that CS6 was independently selling illegal narcotics while working as a criminal informant, CS6's role as a criminal informant was terminated.

On April 14, 2015, based on Skoog's warrant application and supporting affidavit, a state court judge found that probable cause existed and issued a warrant to search the Martin Drive Residence, the attached garage, nearby vehicles that law enforcement had connected to Peterson, and Jackson's and Peterson's persons for controlled substances, and items associated with distribution of heroin, among other items. That same day, Skoog and other officers executed the search warrant, but Peterson was not present.

Peterson and forty others were indicted on May 20, 2015, and charged with violating 21 U.S.C. § 841(a)(1). (Indictment, May 20, 2015, Docket No. 1.) Following Peterson's arrest on May 27, 2015, Skoog, ATF Special Agent Russ Trawrick, and Special Agent Gary Kuhn interviewed him at the Becker County Sheriff's Office. During the interview, Peterson did not appear to be under the influence of any intoxicants or unable to answer or understand any questions he was asked. The officers introduced themselves and told Peterson they were going to read him the *Miranda* warnings. Prior to reading the *Miranda* warnings, Trawrick informed Peterson it was his choice whether

or not to talk with the officers.  Trawrick then informed Peterson that he was arrested on federal charges, his rights would be read to him, and that he could terminate the interview at any time.  Trawrick read Peterson the *Miranda* warnings and asked Peterson if he understood his rights, to which Peterson affirmatively responded by nodding his head and making an audible "mm-hmm."  After a few minutes of discussion, Trawrick repeated to Peterson that he had the choice whether or not to speak with the officers.  Trawrick reminded Peterson he did not have to talk with the officers two additional times during the interview.

Approximately forty-seven minutes into discussion, Peterson told officers he had nothing more to say.  After clarifying that Peterson wanted to end the interview entirely and did not just want to change the topic of questioning, the officers ended the interview.  All questioning stopped after Peterson stated the interview was over.

## ANALYSIS

### I.   STANDARD OF REVIEW

After an R&R is filed by a magistrate judge, "a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Crim. P. 59(b)(2).  For a dispositive matter such as a motion to suppress evidence, "[t]he district judge must consider de novo any objection to the magistrate judge's recommendation."  Fed. R. Crim. P. 59(b)(1), (3); see also 28 U.S.C. § 636(b)(1).  "The objections should specify the portions of the magistrate judge's [R&R] to which objections are made and provide a basis for those objections."  *Nayer v. Walvatne*, No. 07-1958, 2009 WL

4527774, at *2 (D. Minn. Sept. 28, 2008).  If an objection is made that is not specific and only restates arguments previously presented to and considered by a magistrate judge it is not subject to *de novo* review; rather, an objection lacking specificity is reviewed only for clear error.  *See, e.g.*, *Martinez v. Astrue*, No. 10-5863, 2011 WL 4974445, at *3 (E.D. Pa. Oct. 19, 2011) (collecting cases).

## II.     PETERSON'S OBJECTIONS

On August 10, 2015, Peterson filed four motions:  a motion to suppress evidence obtained through searches and seizures performed on April 14, 2015, (Def.'s Mot. to Suppress Search & Seizure, Aug. 10, 2015, Docket No. 562); a motion to suppress his statements during his arrest and interview on May 27, 2015, (Def.'s Mot. to Suppress Statements, Aug. 10, 2015, Docket No. 560); a motion to suppress any information obtained through wire interceptions, electronic surveillance, or any other method, (Def.'s Mot. to Suppress Wire Interceptions, Aug. 10, 2015, Docket No. 581); and a motion to sever his case from all other defendants pursuant to Federal Rule of Criminal Procedure 14, (Def.'s Mot. for Severance, Aug. 10, 2015, Docket No. 564).  The Magistrate Judge held an evidentiary hearing on October 20, 2015, and allowed supplemental briefing. The Magistrate Judge issued an R&R on December 2, 2015, recommending that the Court deny Peterson's motions.  (R&R, Dec. 2, 2015, Docket No. 1050.)

On December 16, 2015, Peterson filed objections to the Magistrate Judge's R&R. (Obj. to R&R, Dec. 16, 2015, Docket No. 1101.)  Peterson makes only general objections to the Magistrate Judge's recommendation to deny each motion and offers no specific

objections to any of the Magistrate Judge's findings or reasoning.  The Court therefore need not review the Magistrate Judge's decision *de novo*.  *See Mashak v. Minnesota*, Civ. No. 11-473, 2012 WL 928251, at *2 (D. Minn. Mar. 19, 2012) ("Objections which are not specific but merely summarize or repeat arguments presented to and considered by a magistrate judge are not entitled to de novo review.").  Nonetheless, even under a *de novo* review of the R&R, the Court finds that the Magistrate Judge properly analyzed Peterson's motions.

### A.      Motion to Suppress Wire Interceptions

Peterson moved to suppress information received through wire interceptions, electronic surveillance or any other method.  He argued that his constitutional rights were violated and statutory procedures governing electronic surveillance were not followed. The Magistrate Judge recommended that the Court deny Peterson's motion because Peterson failed to provide any specific factual or legal grounds to support it.  Peterson generally objects to the Magistrate Judge's recommendation on the motion, but does not provide any specific facts or legal grounds in doing so.

On a motion to suppress, "at a minimum it is defendant's burden to come forth with some evidence and argument to support his position that evidence, statements or a witness identification should be suppressed."  *United States v. Edwards*, 563 F. Supp. 2d 977, 994 (D. Minn. 2008).  "In motions to suppress evidence, a moving party must specify the statement or evidence which is sought to be suppressed, and articulate with clarity the factual and legal basis upon which each is sought to be suppressed."  *United*

*States v. Quiroz*, 57 F. Supp. 2d 805, 822 (D. Minn. 1999).   Here, Peterson did not provide any factual or legal basis as to why evidence obtained through wire interceptions should be suppressed or they were illegally obtained.   Therefore, Peterson has failed to meet his burden of production, and the Court will deny his motion to suppress wire and electronic surveillance.

### B.   Motion to Suppress Search and Seizure

Peterson moved to suppress evidence obtained from the search and seizure of his residence.   Peterson argued the warrant authorizing search and seizure of the Martin Drive Residence was not supported by probable cause because the warrant application relied on CS2 and CS6, whom Peterson argues are not reliable sources. [2]   The Magistrate Judge found that the warrant application's supporting affidavit provided a substantial basis to conclude probable cause existed, and thus recommended denying Peterson's motion.

The Fourth Amendment requires that a search warrant be supported by probable cause that evidence of a crime or contraband will be found in the area to be searched. *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007).   Considering the totality of the circumstances, probable cause exists if a reasonable person could conclude there is a "fair

---

[2] In Peterson's motion, he also asked the Court to suppress any evidence obtained from the search and seizure associated with his arrest on May 27, 2015.   (Def.'s Mot. to Suppress Search & Seizure at 1.)   The Magistrate Judge found that Peterson did not make any arguments supporting his request to suppress evidence from the search and seizure during his arrest, and therefore found that Peterson abandoned this argument.   (R&R at 14.)   Peterson has not objected to the Magistrate Judge's findings on this issue, and therefore, the Court will adopt the Magistrate Judge's conclusion that Peterson abandoned this argument.

probability that contraband or evidence of a crime would be found in" the area specified by the warrant. *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2007) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The Court may "rely on normal inferences drawn by the surrounding circumstances and the allegations of facts contained in the affidavit." *United States v. Carlson*, 697 F.2d 231, 238 (8th Cir. 1983) (internal quotation marks omitted) (quoting *United States v. Leichtling*, 684 F.2d 553, 556 (8th Cir. 1982)). On a motion to suppress, probable cause is determined, "based on 'the information before the issuing judicial officer.'" *United States v. Smith*, 581 F.3d 692, 694 (8th Cir. 2007) (quoting *United States v. Reivich*, 793 F.2d 957, 959 (8th Cir. 1986)). The issuing court receives great deference by the reviewing court, which only concludes whether the issuing court had a substantial basis for finding the existence of probable cause. *Gates*, 462 U.S. at 236, 238-39.

Skoog's warrant application and supporting affidavit link Peterson to Beasley's organization. CS2 stated that in 2014 Beasley met with and gave heroin to "Luke," who is believed to be Peterson. In January 2015, CS6 purchased heroin from Peterson, during an audio-recorded and police-monitored controlled buy at the Martin Drive Residence. During the purchase, CS6 also gave Peterson $300 and directed him to give it to Beasley as payment for an outstanding debt. Law enforcement confirmed that the money was delivered to Beasley based on a recorded phone call between CS6 and Beasley. In April 2015, CS6 again purchased heroin from Peterson at the Martin Drive Residence. A phone call was intercepted on April 13, 2015, from Jackson to Beasley, during which Beasley speaks directly to "Luke" in terms that Skoog believes to mean that Peterson was

in possession of sixty grams of high-quality heroin in a safe.   Additionally, the next morning, Fasthorse and Jackson were seen leaving the Martin Drive Residence in a vehicle Peterson had previously been seen in.

The only information provided by CS2 and CS6 that was not also confirmed and monitored by law enforcement was the 2014 meeting observed by CS2.   However, probable cause existed even without that account.   Based on the information before the issuing judicial officer, there was a fair probability that evidence of a crime could be found at the Martin Drive Residence.   Thus, there was sufficient evidence in the supporting affidavit to provide the issuing judge with a substantial basis to conclude probable cause existed.   Accordingly, the Court will deny Peterson's motion to suppress the search and seizure.

### C.       Motion to Suppress Statements

Peterson moved to suppress statements made during his post-arrest interview at the Becker County Sheriff's Department on May 27, 2015.   Peterson argued that the statements should be suppressed because he did not knowingly and voluntarily waive his *Miranda* rights.   The Magistrate Judge concluded that Peterson waived his *Miranda* rights by affirmatively nodding, and that his waiver was not coerced.

To maintain a person's Fifth Amendment rights, courts generally do not permit the admission of statements made in the course of police interrogation unless the person was given the *Miranda* warning.   *Miranda v. Arizona,* 384 U.S. 436, 444-45 (1966); *United States v. Head*, 407 F.3d 925, 928 (8th Cir. 2005).   In determining whether the *Miranda*

rule has been violated, the Court must look at "the totality of the circumstances surrounding the interrogation, to ascertain whether the accused in fact knowingly and voluntarily" waived his or her *Miranda* rights. *Fare v. Michael C.*, 442 U.S. 707, 724-25 (1979) (citing *Miranda*, 384 U.S. at 475-477). A waiver of *Miranda* rights need not be explicit; it "may be 'implied' through a 'defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver.'" *Berghuis v. Thompkins*, 560 U.S. 370, 384 (2010) (quoting *North Carolina v. Butler*, 441 U.S. 369, 373, 376 (1979)). Coercive police activity is a necessary predicate to a finding of involuntariness. *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).

Considering the totality of the circumstances, Peterson was given the *Miranda* warning and voluntarily, knowingly, and intelligently waived his *Miranda* rights. He nodded affirmatively and made a "mhmm" sound, acknowledging he understood his rights and continued with the interview. Other courts have found that a nod and a "mhmm" sound are legally sufficient indications that a defendant understood his or her *Miranda* rights. *See*, *e.g.*, *United States v. Hurtado*, 21 F. Supp. 3d 1036, 1041 (N.D. Cal. 2014) (holding a "mhmm" sound constitutes an affirmative response indicating waiver of the defendant's *Miranda* rights); *United States v. Graves*, Nos. 95-5950, 95-5951, 1997 WL 76062, at *2 (4th Cir. Feb. 24, 1997) (responding with affirmative nods and 'uh-huhs' when questioned as to whether or not the defendant understood his *Miranda* rights is a valid waiver). Additionally, Peterson chose to terminate the interview, after being reminded of his right to do so twice by the officers, and he offers no evidence of coercion.

Overall, the Court finds that Peterson voluntarily, knowingly, and intelligently waived his *Miranda* rights and voluntarily answered the officer's questions throughout the interview at the Becker County Sheriff's Office.  Therefore, the Court will deny Peterson's motion to suppress his statements.

### D.  Motion to Sever Defendants

Pursuant to Federal Rule of Criminal Procedure 14, Peterson moved the Court to sever his case, arguing severance was necessary to avoid prejudice and to protect his Sixth Amendment right to confrontation.  The Magistrate Judge found that severance was not warranted because Peterson made only general arguments that problems may arise at some point, and did not point to any specific facts demonstrating that joinder was improper or would create prejudice.

 Rule 14 permits the Court, in its discretion, to sever otherwise properly joined defendants or offenses where a joint trial may result in prejudice to one of the defendants.  Fed. R. Crim. P. 14(a).  To grant a motion for severance, "the necessary prejudice must be 'severe or compelling.'"  *United States v. Pherigo*, 327 F.3d 690, 693 (8th Cir. 2003) (quoting *United States v. Warfield*, 97 F.3d 1014, 1018 (8th Cir. 1996)).  Prejudice is severe where the jury is incapable of compartmentalizing the evidence or the defendants' defenses are irreconcilable.  *United States v. Frank*, 354 F.3d 910, 920 (8th Cir. 2004).  Courts consider the complexity of the case and the adequacy of admonitions and instructions of the trial judge when determining the jury's ability to compartmentalize the evidence.  *Pherigo*, 327 F.3d at 693.  However, "[t]he general rule is that coconspirators

should be tried together." *United States v. Kuenstler*, 325 F.3d 1015, 1024 (8th Cir. 2003). Measures "less drastic" than severance, "such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

Peterson carries the burden of showing severe or compelling prejudice if the defendants are not severed. *See Pherigo*, 327 F.3d at 693. He has not identified any particular evidence that may be introduced at trial and cause prejudice. He analogizes his case to the defendant in *Bruton v. United States*, where the Court reversed a defendant's conviction in a joint trial where evidence of an alleged co-conspirator's out-of-court confession was admitted, and the court had refused to grant the defendant's motion for severance. 391 U.S. 123, 124-25 (1968). However, Peterson does not provide any evidence of co-defendant statements that would prejudice him if introduced in trial. Thus without any specific arguments supporting severance, the Court is not persuaded that a joint trial would result in severe and compelling prejudice in this case. Therefore, the Court will deny Peterson's motion for severance.

## ORDER

Based on the foregoing, and the records, files, and proceedings herein, the Court **OVERRULES** Peterson's objections to the R&R [Docket No. 1101], and **ADOPTS** the Report and Recommendation of the Magistrate Judge dated December 2, 2015 [Docket No. 1050]. **IT IS HEREBY ORDERED** that:

1.    Peterson's Motion to Suppress Statements [Docket No. 560] is **DENIED**.

2.      Peterson's Motion to Suppress Search and Seizure [Docket No. 562] is **DENIED**.

3.      Peterson's Motion for Severance of Defendants [Docket No. 564] is **DENIED**.

4.      Peterson's Motion to Suppress Wire Interceptions, Electronic Surveillance, and Other Evidence [Docket No. 581] is **DENIED**.


DATED: April 25, 2016
at Minneapolis, Minnesota.

_____
JOHN R. TUNHEIM
Chief Judge
United States District Court